UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACOB PAUTSCH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, <br><br> Defendant. | Civil Action No. 20-3859 (JEB) |

**MEMORANDUM OPINION**

Between 2004 and 2009, Al-Qaeda in Iraq and associated Sunni terrorist groups perpetrated numerous attacks against American servicemembers and civilians in Iraq.  Victims of those attacks, along with their estates and family members, brought this action against the Islamic Republic of Iran and the Syrian Arab Republic under the terrorism exception to the Foreign Sovereign Immunities Act for these foreign states' material support to the terrorist groups responsible for the attacks.  They seek compensatory and punitive damages for their physical, economic, and psychological injuries.  Because Defendants have failed to appear, default has been entered.  Plaintiffs now move for default judgment as to liability.  The Court grants the motion as to those Plaintiffs who have articulated a cause of action but denies it as to the others.

**I.      Background**

Plaintiffs are U.S. nationals, along with their estates and members of their families, who were serving in Iraq as servicemembers or military contractors when they were injured or killed in eight terrorist attacks committed by Al-Qaeda in Iraq (AQI) and associated Sunni terrorist

1

groups in Iraq (STGIs) between 2004 and 2009. See ECF No. 1 (Compl.), ¶¶ 1–2. Jason Pautsch, whose estate is the lead Plaintiff, was serving in the U.S. Army when he was killed in an AQI attack involving a suicide-vehicle-borne improvised explosive device (SVBIED) in western Mosul, Iraq. See id., ¶¶ 200–201. As for the eight remaining Plaintiffs, their convoys, vehicles, and hotels were struck by explosive devices in AQI and STGI attacks, causing them to sustain physical and psychological injuries, including post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI). See id., ¶¶ 208–210, 213–215, 224–226, 230–231, 237–238, 244–245, 251–253, 257, 262–263, 267, 270–271, 276–278, 285.

Plaintiffs filed this suit against Iran and Syria on December 31, 2020. See Compl. Two months later, they mailed copies of the summons, Complaint, and notice of the suit to those states, see ECF Nos. 8 and 9 (Affs. Foreign Mailing), but Defendants refused delivery and returned the summons as unexecuted. See ECF Nos. 13 (Status Rep.); 15 (Aff. Foreign Mailing). Plaintiffs then attempted service of process via diplomatic channels and transmitted the service documents to the U.S. State Department, see ECF Nos. 17 and 18 (Req. Clerk), which successfully transmitted them to the Iranian and Syrian Ministry of Foreign Affairs on July 1 and July 26, 2022, respectively. See ECF Nos. 21 (Iran Summons Returned Executed); 22 (Syria Summons Returned Executed). Both Syria and Iran failed to answer the Complaint. On September 2, 2022, consequently, Plaintiffs requested an entry of default, see ECF Nos. 23 and 24 (Affs. Default), which the Clerk granted six days later. See ECF Nos. 25 and 26 (Entry Default). Plaintiffs now move for default judgment and ask the Court to refer the question of damages to a special master. See ECF No. 31-1 (Mot. Def. J.).

2

## II.     Legal Standard

Default judgment may be ordinarily entered where a defendant is "totally unresponsive," and its default is plainly willful, as reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment. See Gutierrez v. Berg Contracting Inc., 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000) (citing Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980)) (internal quotation omitted). In the "'absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense,' it is clear that the standard for default judgment has been satisfied." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).

Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez, 2000 WL 331721, at *2 (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)).

Under the FSIA, moreover, there is a heightened standard for default judgment because the Act "codifies a baseline principle of immunity for foreign states." Turkiye Halk Bankasi A.S. v. United States, 598 U.S. 264, 272 (2023); Weinstein v. Islamic Republic of Iran, 175 F. Supp. 2d 13, 19–20 (D.D.C. 2001) ("[D]efault judgments under the FSIA require additional findings than in the case of ordinary default judgments."). Section 1608(e) requires that "the claimant  establish[] his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Regardless of whether a foreign state makes an appearance, the court must determine that an exception to immunity applies and that the plaintiff has a sufficient legal and factual basis for his claims. See Jerez v. Republic of Cuba, 777 F. Supp. 2d 6, 18–19 (D.D.C.

2011). In making this determination, the Court has "a duty to scrutinize plaintiff's allegations" and should not "unquestioningly accept a complaint's unsupported allegations as true." Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 211 (D.D.C. 2012).

### III.   Analysis

The Court's analysis proceeds as follows: it first addresses the jurisdictional issues and then evaluates Defendants' liability.

#### A.   Subject-Matter Jurisdiction

Foreign states are generally immune from suit in federal court, subject to exceptions codified in the Foreign Sovereign Immunities Act. See 28 U.S.C. § 1604; see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court . . . ."). Relevant here is section 1605A, the so-called "terrorism exception" to the FSIA. See Fraenkel v. Islamic Republic of Iran, 892 F.3d 348, 352 (D.C. Cir. 2018). Under that exception, the FSIA abrogates a foreign state's sovereign immunity and provides federal courts with subject-matter jurisdiction over suits against such an entity where (1) "money damages are sought" (2) "against a foreign state for" (3) "personal injury or death that" (4) "was caused" (5) "by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1); see also Gration v. Islamic Republic of Iran, 2023 WL 5221955, at *22 (D.D.C. Aug. 15, 2023); Borochov v. Islamic Republic of Iran, 589 F. Supp. 3d 15, 30 (D.D.C. 2022).

All five conditions are met here. First, Plaintiffs seek money damages. See Compl. at 49. Second, Iran and Syria are foreign states. Third, Plaintiffs allege personal injury and death to servicemembers and military contractors or their family members. Id., ¶ 1.

4

The fourth and fifth criteria are more involved. As to the fourth, Plaintiffs have shown that Iran and Syria's provision of material support to AQI and its associated STGIs caused their injuries. The FSIA requires that Plaintiffs show "proximate cause," meaning only "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff suffered." Ben-Yishai v. Syrian Arab Republic, 642 F. Supp. 3d 110, 125 (D.D.C. 2022) (citation omitted). "This inquiry contains two elements: (1) the defendant's actions must be a substantial factor in the sequence of events leading to the injury; and (2) the injury must have been reasonably foreseeable or anticipated as a natural consequence of the defendant's conduct." Id. at 125 (cleaned up).

Plaintiffs' expert — Colonel Joel Rayburn (former U.S. Special Envoy for Syria and former Deputy Assistant Secretary of State for Near Eastern Affairs) — explained that it is "highly likely" that all eight attacks listed in the Complaint "were carried out by AQI or other associated STGIs, that were associated with or under the dominant influence of AQI and that enjoyed material support from the Iranian and Syrian governments." See ECF No. 31-2 (Rayburn Report) at 9. He also detailed Iran and Syria's history of providing material support to Al Qaeda, AQI, and other STGIs to carry out attacks against U.S. troops and civilians during the U.S.-led military campaign in Iraq from 2003 to 2011. Id. As highlighted by Rayburn, "[L]ogistical support, territorial safe haven[s], personnel recruitment, weapons, explosives, training, and other categories of support" from the Iranian and Syrian governments to AQI and its associated STGIs were substantial factors in the chain of events leading up to the eight attacks. Id.

Plaintiffs' injuries, moreover, were reasonably foreseeable consequences of Iran and Syria's support of these terrorist groups. According to Rayburn, the Iranian government

5

"encouraged and enabled" AQI and other terrorist groups to conduct attacks against U.S. forces in Iraq. Id. at 7. The Syrian government, moreover, assisted AQI and other STGIs in setting up terrorist-facilitation networks in which tens of thousands of militants from Syria and other countries were able to cross into Iraq to conduct these attacks. Id. at 7–8. The Court thus finds a reasonable connection between Defendants' actions and the injuries Plaintiffs suffered.

Fifth, the attacks — which Iran and Syria provided material support for — constituted "extrajudicial killing[s]" or such an attempt within the meaning of the Act. While some Plaintiffs were U.S. servicemembers who were involved in military operations, as opposed to civilian bystanders, all Plaintiffs are covered by the terrorism exception, which provides a private right of action to members of the armed forces and civilians alike. See 28 U.S.C. § 1605A(c)(1)–(2); see also Roth v. Islamic Republic of Iran, 651 F. Supp. 3d 65 (D.D.C. 2023) (finding Iran liable under FSIA exception for 25 attacks on U.S. servicemembers in Iraq); Karcher v. Islamic Republic of Iran, 396 F. Supp. 3d 12 (D.D.C. 2019) (finding same for seven attacks on U.S. servicemembers in Iraq). The FSIA terrorism exception, moreover, covers injuries to Plaintiffs — including Neuman, Goldsmith, Bryars, O'Malley, and Shaffer, see Compl., ¶¶ 212–23, 250–56, 229–42, 275–89 — that did not result in death. Courts in this district have generally held that "attempted extrajudicial killings" may still constitute acts of extrajudicial killings under section 1605A. See Stearns v. Islamic Republic of Iran, 633 F. Supp. 3d 284, 346 (D.D.C. 2022); see also Brown v. Islamic Republic of Iran, 2023 WL 4824740, at *9 (D.D.C. July 27, 2023) (agreeing that extrajudicial killing includes deliberate attempts to kill); Lee v. Islamic Republic of Iran, 518 F. Supp. 3d 475, 491 (D.D.C. 2021) (concluding that § 1605A(a)(1)'s text and "the court's mandate to construe ambiguities in the FSIA broadly" allowed jurisdiction for attempts to commit extrajudicial killings); Gill v. Islamic Republic of

Iran, 249 F. Supp. 3d 88, 99 (D.D.C. 2017) (finding that "extrajudicial killing" occurred under FSIA where no victims died in attack). The Court agrees.

Even when all five conditions are met, however, a federal court may hear a claim only if (1) "the foreign state was designated as a state sponsor of terrorism at the time the act . . . occurred"; (2) "the claimant or victim was, at the time [of] the act[,] . . . . a national of the United States," member of the armed forces, or government employee or contractor; and (3) "in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim." 28 U.S.C. § 1605(A)(a)(2)(A)(i)–(iii); see also Gration, 2023 WL 5221955, at *22.

Plaintiffs meet two of the three conditions, and the third does not apply. First, Syria and Iran have been designated as state sponsors of terrorism since 1979 and 1984, respectively. See Dep't of State, Bureau of Counterterrorism, State Sponsors of Terrorism (last visited Nov. 10, 2023), https://perma.cc/CBT2-2C87. Second, each Plaintiff (whether a victim or family-member claimant) satisfies the second condition because all nine victims were either U.S. nationals, members of the armed forces, or civilian government contractors at the time of the attacks. See Compl., ¶¶ 200, 208, 213, 230, 237, 244, 251, 261, 266, 270, 276; see also Gration, 2023 WL 5221955, at *22 (claimant and victim need not both satisfy § 1605A(a)(2)(A)(ii)). Finally, as the attacks occurred in Iraq, not Iran nor Syria, the third condition does not come into play. The Court can thus easily conclude that Congress has abrogated Iran and Syria's sovereign immunity pursuant to 28 U.S.C. § 1605A.

B. Personal Jurisdiction

Next up is personal jurisdiction. Such jurisdiction over a foreign state exists — as to every claim for relief over which district courts have subject-matter jurisdiction — where service

has been made under section 1608 of the FSIA. See 28 U.S.C. § 1330(b). Section 1608(a) sets out four methods by which service may be made, in ranked order. The summons and complaint may be delivered, first, "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision," id., § 1608(a)(1), or, second, "in accordance with an applicable international convention on service of judicial documents." Id., § 1608(a)(2). If no such agreements exist, plaintiffs must attempt service through a third method, which involves sending the requisite documents "by any form of mail requiring a signed receipt . . . to the head of the ministry of foreign affairs of the foreign state concerned." Id., § 1608(a)(3). And should that fail, plaintiffs may resort to method four: the Court Clerk may send the packet to the Secretary of State for transmittal "through diplomatic channels to the foreign state." Id., § 1608(a)(4); see also Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1054 (2019).

    Plaintiffs have successfully effected service on Iran and Syria. The parties lack a special service arrangement, and the U.S. is not a signatory to a service convention with either country, thereby ruling out the first two methods. See Hammons v. Islamic Republic of Iran, 2023 WL 5933340, at *16 (D.D.C. July 24, 2023); U.S. Dep't of State, Syria Judicial Assistance Information (last visited Nov. 10, 2023), https://perma.cc/9ESK-7H7T. Plaintiffs attempted method three by mailing the relevant documents to Iran and Syria's foreign ministers in their home country, but did not succeed. See ECF No. 12 (Affidavit). Plaintiffs then turned to the fourth method. The State Department transmitted the documents to Iran's Ministry of Affairs through the Embassy of Switzerland on July 1, 2022, and to Syria's Ministry of Affairs through the Embassy of the Czech Republic on July 26, 2022. See Iran Summons Returned Executed;

Syria Summons Returned Executed. As a result, service on Defendants was finally effective as of those dates. See 28 U.S.C. § 1608(c)(1).

Mindful that it lacks the authority "to raise the FSIA terrorism exception's statute of limitations on behalf of an entirely absent defendant," Maalouf v. Islamic Republic of Iran, 923 F.3d 1095, 1112 (D.C. Cir. 2019), the Court sees no other preliminary hurdles and proceeds onward to the merits.

C. Liability

Although section 1605A creates a private right of action, it does not set out guidance on the substantive bases for liability that determine plaintiffs' entitlement to damages. Consistent with guidance from the D.C. Circuit, district courts "may rely on well-established statements of common law, found in state reporters, the Restatement of Torts, and other respected treatises." Fraenkel, 892 F.3d at 353; see also Bettis v. Islamic Republic of Iran, 315 F.3d 325, 333 (D.C. Cir. 2003) (using Restatement "as a proxy for state common law" in determining FSIA liability). Here, Plaintiffs assert claims for wrongful death and intentional infliction of severe emotional distress. See Compl. at 47–48. They also generally allege "personal injury." Id. at 46. The Court considers each theory in turn.

First, Plaintiffs seek recovery for economic losses accruing to the estate of Jason Pautsch. Id. at 47. Given that "acts of terrorism under section 1605A . . . are, by definition, wrongful," Shoham v. Islamic Republic of Iran, 2017 WL 2399454, at *18 (D.D.C. June 1, 2017), they may recover for wrongful death "upon establishing that the defendants caused [the victim's] death." Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 79 (D.D.C. 2017) (citing Restatement (Second) of Torts § 925 (1965)). Pautsch was killed in an attack involving a SVBIED. See Compl., ¶ 200. Plaintiffs' expert found to a "reasonable degree of professional confidence" that

the attack was conducted by AQI. See Rayburn Report at 48. The suicide bomber driving the SVBIED was a Tunisian jihadist who had been recruited by AQI, and the SVBIED used in the attack was "typical" of AQI SVBIED attacks committed in 2008–09. See id. at 49–50.

As mentioned earlier, Rayburn concluded that Iran and Syria played a significant role in this, and similar, attacks. See id. at 7–8. The specific suicide bomber responsible for the attack was recruited by an AQI facilitation network based in Syria and Iraq, which was set up under Syrian dictator Bashar al-Assad's authority and with the assistance of Syrian government officials and agencies. See id. at 49, 36–39. From 2003 onward, moreover, Iran gave material support to Sunni extremist groups to carry out attacks in Iraq, including against U.S. personnel. See id. at 22.

Rayburn is far from alone in this judgment. The U.S. Treasury has noted that Iran's Ministry of Intelligence and Security provided money and weapons to AQI and negotiated prisoner releases of AQI operatives. See U.S. Dep't of Treasury, Treasury Designates Iranian Ministry of Intelligence and Security for Human Rights Abuses and Support for Terrorism (Feb. 16, 2012), https://perma.cc/97K2-D567. The Treasury also noted that a senior officer in the IRGC-QF sought to sponsor Sunni groups to carry out suicide bombings, including against U.S. troops. See U.S. Dep't of Treasury, Treasury Designates Individuals, Entity Fueling Iraqi Insurgency (Jan. 9, 2008), https://perma.cc/S23V-WCSA. The Court finds such evidence to be clearly persuasive. It thus concludes that Plaintiffs have sufficiently proven the validity of their wrongful-death theory of recovery against Defendants.

Next, the family members of the victims injured or killed in AQI or STGI attacks seek to recover damages for Defendants' intentional infliction of emotional distress. Under general principles of tort law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly

causes severe emotional distress to another is subject to liability for such emotional distress," both to the victim and "to a member of such person's immediate family who is present at the time." Estate of Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 26 (D.D.C. 2009) (quoting Restatement (Second) of Torts § 46). Because "terrorism is sufficiently extreme and outrageous" and "intended to inflict severe emotional harm on even those not present at the site of the act," Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 400 (D.D.C. 2015), courts in this district have allowed immediate family members of terrorism victims to state a claim of IIED even if they were not present at the site of the attack. See, e.g., id. at 401. Plaintiffs have adequately alleged that they suffered severe emotional distress — namely, severe mental anguish, extreme emotional pain and suffering, and the loss of their family members' society, companionship, comfort, advice, and counsel. See Compl., ¶¶ 206, 223, 289. They, accordingly, have stated a valid theory of recovery for their IIED claims as to family members.

As to the survivors of the terrorist attacks themselves, they allege only the vague term of "personal injury" but never articulate a theory of liability — such as assault or battery for this count. See id. at 46–47; see also Mot. Def. J. at 34–35 (not citing a particular tort); cf. Borochov, 589 F. Supp. 3d at 35–36 (plaintiffs alleging battery and assault); Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 335–36 (D.D.C. 2014) (same); Mark v. Islamic Republic of Iran, 626 F. Supp. 3d 16, 33–34 (D.D.C. 2022) (plaintiffs alleging battery). With no legal basis to find liability, the Court cannot award judgment to these Plaintiffs. See Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 175–76 (D.D.C. 2010) ("[P]laintiffs in § 1605A actions . . . must articulate the justification for such recovery, generally through the lens of civil tort liability."); Mueller v. Syrian Arab Republic, 656 F. Supp. 3d 58, 77–78 (D.D.C. 2023) (requiring plaintiffs to submit supplemental briefing to articulate justification for recovery through tort liability).

Only Pautsch's estate and family members of the other victims may recover under the current Complaint.

## IV.     Conclusion

For these reasons, the Court will grant Plaintiffs' Motion in part and deny it in part. It will enter default judgment on liability for wrongful death and intentional infliction of emotional distress.  A separate Order so stating will issue this day.

/s/ James E. Boasberg  
JAMES E. BOASBERG  
Chief Judge

Date:  December 5, 2023