UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------x
JACOB PAUTSCH, *et al.*,

        Plaintiffs,

-against-

ISLAMIC REPUBLIC OF IRAN, *et al.*,

        Defendants.
------------------------------------------------------------------------x

Case No. 20-cv-03859 (JEB)

### PLAINTIFFS' RULE 60(B)(1) AND (6) MOTION TO PARTIALLY RECONSIDER ORDER, ECF NO. 35, AND MEMORANDUM OPINION, ECF NO. 36

Pursuant to Federal Rule of Civil Procedure Rule 60(b)(1) and (6) providing for the relief from "a final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief," Plaintiffs respectfully move for partial reconsideration of this Court's Order, ECF No. 35, and Memorandum Opinion, ECF No. 36, denying default judgment to eight of the 13 Plaintiffs in this case.

### REQUEST FOR RULE 60(B)(1) AND (6) RELIEF

This Court denied default judgment to the eight injured Plaintiffs who survived their terrorist attacks on the basis that they did not articulate a theory of liability for their First Claim of Relief. *See* Mem. Op., ECF No. 36 at 11-12.[1] Plaintiffs regret that their submission did not clearly set out their theories of liability (assault, battery, and intentional infliction of emotional distress (IIED)), and respectfully request that this Court adopt the practice of other courts in this District which have resolved that deficiency in order not to prejudice the plaintiffs in those cases where,

---

[1] This Court entered default judgment for the five family member Plaintiffs in this case, *see id.* at 10-11: Jacob Pautsch, David Pautsch, Teri Johnson, Erika Neuman, and Charles L. Shaffer, Jr. Compl., ECF No. 1, ¶¶ 203-05, 222, 288. While the Complaint includes a claim of relief for estates, *see id.*, ¶¶ 295-99, none of the Plaintiffs in this case comprise decedents' estates.

as here, the theory is deducible from the complaints' allegations, the alternative means of relief would impose a significant burden on the plaintiffs (but none on the defendants), and the Court has the discretion to grant the relief requested.

"[C]ourts in this District previously have allowed a plaintiff's FSIA claim to proceed, even absent a clearly articulated theory of recovery, when the plaintiff alleged all the facts necessary to establish the elements of § 1605A(c). Here, the court is presented with all the facts necessary to establish causation and injury and, therefore, 'will not exalt form over substance' to preclude relief." *Stansell v. Republic of Cuba*, 217 F. Supp. 3d 320, 341-42 (D.D.C. 2016) (citing *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 176, 181-82 (D.D.C. 2010) and *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 12-13 (D.D.C. 2010)).

For example, where the complaint in *Barry v. Islamic Republic of Iran* alleged "mental anguish, emotional pain and suffering, and/or economic losses," Compl. ¶ 91, No. 16-cv-1625 (RC) (D.D.C. Aug. 10, 2016) (similar to the instant Plaintiffs' allegations of "severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and any economic losses, Compl., ECF No. 1, ¶ 293), that court construed the count, "[b]ased on this plain text," as "invoking the federal private right of action to obtain relief via 'the lens of [the] civil tort' of intentional infliction of emotional distress (IIED)." 410 F. Supp. 3d 161, 177 (D.D.C. 2019) (citing *Rimkus*, 750 F. Supp. 2d at 176). In *Rimkus*, the court wrote: "Here, plaintiff's Complaint does not clearly articulate a particular theory of recovery, but rather alleges facts necessary to establish the five basic elements of a cause of action under § 1605A. The Court, however, will not exalt form over substance to dismiss plaintiff's action. … The fact that plaintiff does not expressly set forth a prototypical common law cause of action will therefore not defeat his claim for relief." 750 F. Supp. 2d at 176.

Other examples of courts in this District invoking the theories of assault, battery, and IIED, even when they are not explicitly invoked in the complaint, when the facts pleaded in the complaint implicitly reflect and support those theories are: *Bernhardt v. Islamic Republic of Iran*, No. 18-cv-2739 (TJK), 2023 U.S. Dist. LEXIS 48073, at *39 n.8 (D.D.C. Mar. 22, 2023) ("Even without such an articulation of a 'theory of liability' in their Amended Complaint, '[t]he Court . . . will not exalt form over substance to dismiss [their] action.' The facts Plaintiffs have pled and established show liability under the theories of battery, assault, and intentional infliction of emotional distress.") (citations to record omitted) (citing *Rimkus*, 750 F. Supp. 2d at 176); *Stansell*, 217 F. Supp. 3d at 341-42 (D.D.C. 2016) ("The language Stansell, Gonsalves, and Howes use in their Complaint and the evidence before the court largely align with the quintessential common law torts of battery (aircraft sabotage and physical torture); false imprisonment (hostage taking); and assault and intentional infliction of emotional distress (mental and emotional harm).") (internal citations omitted); *Valencia*, 774 F. Supp. 2d at 13 ("Despite the lack of clarity in plaintiffs' pleading, the Court will look beyond the mechanical forms pleaded by plaintiffs to identify theories applicable to this case. Based on the allegations in the Complaint and the evidence set forth above, the Court identifies three particular theories of relief which are available to plaintiffs in this case: battery, assault, and intentional infliction of emotional distress.") (internal citations omitted).

Construing Plaintiffs' filings to present the legal theories detailed below will prevent prejudicing Plaintiffs. Serving a new complaint will add substantial fees and additional time: "[T]he imposition of these substantial fees imposes a significant burden upon victims of terrorism," which has "troubled" the court. *Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70, 73 (D.D.C. 2011). *See also id.* at 73 n.1 (noting the same concern applies to serving complaints on State Sponsors of Terrorism). Serving Defendants and waiting for them to inevitably default

3

will take months to complete, adding to the "long struggle in pursuit of justice through costly and time-consuming civil litigation against Iran." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 38 (D.D.C. 2009).

Moreover, Defendants will not be prejudiced at all. They have decided to flout this Court's summons, as they have in nearly every 28 U.S.C. § 1605A case. Nor are they lacking necessary notice – most cases do not require amendment, and none require re-serving an amended complaint. Amended complaints which do "little more than provide the particularity required" that plaintiffs must identify "a particular cause of action arising out of a specific source of law" other than the FSIA do not need to be re-served. *Dammarell v. Islamic Republic of Iran*, 370 F. Supp. 2d 218, 220, 225 (D.D.C. 2005) (citing *Acree v. Republic of Iraq*, 370 F.3d 41, 58 (D.C. Cir. 2004)).

## THEORIES OF LIABILITY

To clarify their prior submissions, Plaintiffs present the following three theories of tort liability for the surviving Plaintiffs denied judgment in the Court's order (Thomas Vriens, Brian Neuman, Wallace Byars, Dennis O'Malley, Richard Vessell, Jason Goldsmith, James Davis, and Charles James Shaffer, Compl., ECF No. 1, ¶¶ 207-89), and discuss each below.

1. **Assault.** "Assault liability for attempted extrajudicial killing under the FSIA requires two conditions: '(1) [defendants] acted intending to cause a harmful contact with, or an imminent apprehension of such a contact by, those attacked[,] and (2) those attacked were thereby put in such imminent apprehension.'" *Cohen v. Islamic Republic of Iran*, No. 17-cv-1214 (JEB), 2019 U.S. Dist. LEXIS 115278, at *14 (D.D.C. July 11, 2019) (quoting *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 35 (D.D.C. 2012)). Plaintiffs have demonstrated that Defendants acted "with manifest intent to cause harmful contact" to U.S. forces and put them in imminent apprehension of harm; "indeed, such is the entire purpose of terrorism." *Id.* This Court adopted

4

Plaintiffs' expert's conclusions that "the Iranian government 'encouraged and enabled AQI and other terrorist groups to conduct attacks against U.S. forces in Iraq" and that "[t]he Syrian government, moreover, assisted AQI [Al-Qaeda in Iraq] and other STGIs [Sunni terrorist groups in Iraq] in setting up terrorist-facilitation networks in which tens of thousands of militants from Syria and other countries were able to cross into Iraq to conduct these attacks." Mem. Op., ECF No. 36, at 5-6 (citing Expert Report of Col. (Ret.) Joel Rayburn).

    2.    **Battery.** "[B]attery liability arises when [defendants] acted '[(1)] intending to cause a harmful or offensive contact with, or an imminent apprehension of such a contact by, those attacked and (2) a harmful contact with those attacked directly or indirectly resulted.'" *Cohen*, 2019 U.S. Dist. LEXIS 115278, at *14 (quoting *Wultz*, 864 F. Supp. 2d at 36)). Defendants' "act[s] of terrorism both intended to cause and did result in harmful contact" with the surviving Plaintiffs. *Id.* As this Court observed, all of the Plaintiffs were injured in attacks during which "Plaintiffs, their convoys, vehicles, and hotels were struck by explosive devices in AQI and STGI attacks, causing them to sustain physical and psychological injuries, including post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI)." Mem. Op., ECF No. 36 at 2 (citing Compl., ECF No. 1, ¶¶ 208–210 (Thomas Vriens), ¶¶ 213–215 (Brian Neuman), ¶¶ 224–226, 230–231 (Wallace Byars), ¶¶ 237–238 (Dennis O'Malley), ¶¶ 244–245 (Richard Vessell), ¶¶ 251–253 (Jason Goldsmith), ¶¶ 257, 262–263 (Wallace Byars), ¶¶ 267 (Dennis O'Malley), ¶¶ 270–271 (James Davis), ¶¶ 276–278, 285 (Charles James Shaffer)).

    3.    **Intentional infliction of emotional distress.** As this Court recognized, victims of terrorist attacks may bring claims for IIED. *See id.* at 10-11 ("Under general principles of tort law, '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress,' both to the victim and 'to a

5

member of such person's immediate family who is present at the time.'") (emphasis added) (citing *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 26 (D.D.C. 2009) (quoting Restatement (Second) of Torts § 46).

As explained in *Heiser*, the Restatement (Second) of Torts provides a broad definition of IIED where the wrong is "extreme and outrageous," as it is in the case of terrorism:

> Terrorism, unique among the types of tortious activities in both its extreme methods and aims, passes this test easily. As the *Stethem* court wrote, "All acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror, in their targeted audience: The more extreme and outrageous, the greater the resulting distress." Indeed, as this Court put it, the "intent to create maximum emotional impact," particularly on third parties, is terrorism's *raison d'etre*.

659 F. Supp. 2d at 27 (quoting *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002) and *Eisenfeld v. Islamic Republic of Iran*, 172 F. Supp. 2d 1, 9 (D.D.C. 2000)).

Plaintiffs note that in many cases, recovery for IIED injuries is awarded as part of assault or battery claims. *See Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261, 287 (D.D.C. 2005) ("Although a plaintiff is free to advance multiple theories of liability and to obtain full recovery for his damages, he is not entitled to 'double recovery' for the same loss or injury…. A battery claim, however, typically will allow a more complete recovery than an IIED claim, because any recovery for IIED would not include damages resulting from … physical injuries inflicted by the battery, whereas the damages recoverable for the battery usually would encompass any mental suffering that followed (assuming there is a sufficient causal link between the battery and the subsequent emotional distress).") (citations omitted). Plaintiffs here do not seek multiple (duplicative) recoveries, but it is possible some IIED injuries result not from harmful contact (battery), as *Dammarell* suggested, or reasonable apprehension of imminent harmful contact (assault), but from other elements of the attack, such as witnessing the aftermath. *See Peterson v.*

*Islamic Republic of Iran*, 515 F. Supp. 2d 25, 56 (D.D.C. 2007) (noting that physical injuries "are not required" for IIED). For example, the Plaintiffs who survived the March 9, 2005, attack on the Al-Sadeer Hotel are alleged to have "witnessed gruesome injuries." Compl., ECF No. 1, ¶¶ 232, 247. IIED is a way of expressing the fact that they suffered both physical and emotional injuries as a result of the attack, but that the latter was not limited to the psychological trauma deriving from their physical injuries. Thus, even if the Court reviews their claims under a battery theory of liability, the IIED theory may help in the overall assessment of their pain, suffering, and long-term prognoses.

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the Rule 60(b)(1) and (6) relief requested. In addition, if the Court deems it useful and appropriate, Plaintiffs will also submit an amended Proposed Findings of Fact and Conclusions of Law for the wounded Plaintiffs further articulating the theories of liability set forth above.

Dated: December 12, 2023

                                          Respectfully submitted,

                                         **OSEN LLC**

By:    /s/ Dina Gielchinsky
         Dina Gielchinsky (DC Bar No. NJ011)
         Gary Osen (DC Bar No. NJ009)
         Ari Ungar (DC Bar No. NJ008)
         Michael Radine (DC Bar NJ015)
         Aaron Schlanger (DC Bar No. NJ007)
         190 Moore Street, Suite 272
         Hackensack, New Jersey 07601
         Tel.: (201) 265-6400
         Fax: (201) 265-0303

         *Attorneys for Plaintiffs*