UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JACOB PAUTSCH,** *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>**ISLAMIC REPUBLIC OF IRAN,** *et al.*, <br><br>Defendants. | Civil Action No. 20-3859 (JEB) |

**MEMORANDUM OPINION**

On December 5, 2023, this Court entered a default judgment finding Defendants Islamic Republic of Iran and the Syrian Arab Republic liable for 2004–09 terrorist attacks in Iraq that killed U.S. Army Corporal Jason Pautsch and injured other Americans. Certain Plaintiffs — Pautsch's family and his estate — now seek $5 million in solatium damages for each of his parents and $3 million on behalf of his brother. The Court will enter judgments in the sought amount for the parents and award $2.5 million to Pautsch's brother.

**I.  Background**

Pautsch, other servicemembers, and military contractors were the victims of a series of terrorist attacks committed by Al-Qaeda in Iraq and other Sunni terrorist groups. See ECF No. 40 (Am. Compl.), ¶¶ 1–2. Pautsch was killed in an attack involving a suicide-vehicle-borne improvised explosive device detonated by a jihadist who had been recruited by a network of AQI supported by Syrian dictator Bashar al-Assad's regime. See ECF No. 31–2 (Expert Report of Col. (Ret.) Joel Rayburn) at 36–39, 49. Iran, for its part, provided money and weapons to AQI, see Pautsch v. Islamic Republic of Iran, 2023 WL 8433216, at *5 (D.D.C. Dec. 5, 2023), and is

1

"highly likely" to have provided material support for the AQI network responsible for the attack. See Rayburn Report at 9.

Pautsch's estate, as lead Plaintiff, commenced this action against the two nations in 2020. See Pautsch, 2023 WL 8433216, at *1. This Court subsequently granted default judgments for those Plaintiffs who had articulated a cognizable theory of liability — including Pautsch's estate, his parents, and his brother, see id. at *6 — and it now examines the Pautsch family members' solatium claims. For clarity and not for lack of respect, the Court refers to Pautsch's father, David, and brother, Jacob, by their first names. Pautsch's mother is Teri Johnson.

## II. Legal Standard

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, contains a "terrorism exception," which provides federal courts with jurisdiction over suits where plaintiffs seek money damages from a foreign state for "personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). It also creates a cause of action for "national[s] of the United States" to sue foreign states that are designated by the U.S. government as sponsors of terrorism and perform or materially support the acts described in 28 U.S.C. § 1605A(a)(1). Id. § 1605A(c). The statute specifies that "[i]n any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages." Id.; accord Fraenkel v. Islamic Republic of Iran, 892 F.3d 348, 353 (D.C. Cir. 2018).

Plaintiffs may recover damages by showing "that the projected consequences are reasonably certain (*i.e.*, more likely than not) to occur, and [proving] the amount of damages by a reasonable estimate." Fraenkel, 892 F.3d at 353 (quoting Hill v. Republic of Iraq, 328 F.3d 680, 684 (D.C. Cir. 2003)). While these requirements create "some protection against an unfounded

default judgment," plaintiffs need not produce "more or different evidence than [a court] would ordinarily receive; indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required." Id. (citation omitted).

### III. Analysis

Although a finding of liability under the FSIA entitles plaintiffs to pursue claims for several types of damages, see § 1605A(c), these Plaintiffs seek only solatium damages. See ECF No. 47 (Pl. Proposed Findings of Fact and Conclusions of Law) at 3. As defined by the D.C. Circuit, these damages seek to compensate victims for the "[m]ental anguish, bereavement and grief" resulting from a loved one's death or injury. Fraenkel, 892 F.3d at 356–57 (citation omitted). They "are by their very nature unquantifiable." Moradi v. Islamic Republic of Iran, 77 F. Supp. 3d 57, 72 (D.D.C. 2015). Tasked with quantifying the unquantifiable, courts in this circuit, this Court included, often turn to the damage ranges summarized in Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C. 2006), which recommends awarding around $5 million to parents and $2.5 million to siblings of deceased victims. See Fraenkel, 892 F.3d at 361.

Plaintiffs here request that Heiser baseline damages of $5 million be awarded to each parent, and a sum of $3 million — representing a 20% upward departure from the baseline $2.5 million award — be awarded to Jacob. See PFFCL at 22. The Court examines each request in turn.

#### A. Teri Johnson and David Pautsch

The Court agrees that awards of $5 million for each parent are warranted. Both had reactions to Pautsch's death that one would expect from those who lose their children. Johnson and David were each prescribed medication to deal with the grief of their son's loss, suffered

3

from anxiety, and encountered difficulties sleeping. See id. at 8, 14. Johnson remained depressed for years and turned to alcohol to cope with her mental anguish for a decade. Id. at 7–8. Still today, fifteen years later, she suffers from anxiety and distress from the incident. Id. at 8. These reactions resemble those for which baseline awards are typically given. See, e.g., Selig v. Islamic Republic of Iran, 573 F. Supp. 3d 40, 66 (D.D.C. 2021) (providing baseline damages for parent who experienced anxiety, sleeplessness, and "unbearable pain" after death of daughter); Heiser, 466 F. Supp. 2d at 285–86 (awarding parent who suffered "severe mental anguish" and whose doctor wanted to "put her on medication for depression" baseline damages).

The Court, moreover, sees no reason to depart downward from Heiser baseline awards for either parent. Although courts will do so when the relationship between the deceased and his surviving family members becomes attenuated before his death, see Valore v. Islamic Republic of Iran, 700 F. Supp 2d. 52, 87 (D.D.C. 2010) (halving solatium damages for brother who lost contact with and did not attend deceased brother's wedding), that is not the case here. Both parents remained close to Pautsch even after they separated, see PFFCL at 4, and up until his death. Id. at 5–6, 11. The Court thus believes that an award of $5 million is appropriate for each parent.

### B. Jacob Pautsch

For Jacob, the Court issues an award of $2.5 million, the baseline award for siblings of those killed in terrorist attacks. Like his parents, Jacob and Pautsch remained close throughout the time they had together. Pautsch's death "was the most catastrophic thing [Jacob has] ever gone through." ECF No. 47-7 (Declaration of Jacob Pautsch), ¶ 34. Soon after the attack, Jacob was prescribed medications to deal with the emotions connected to his brother's death. Id., ¶ 33.

And Jacob has resigned himself to the fact that his sadness for the loss of his brother will never go away, even when he is experiencing happiness. Id., ¶ 35.

Because Jacob experiences some particularly severe psychological difficulties, Plaintiffs here seek a 20% upward departure for his award. They note that in 2013 and 2015, approximately four and six years after the attack, Jacob experienced two nervous breakdowns requiring involuntary commitment and six months of monitoring. Id., ¶ 34. In 2020, eleven years after the attack, he was prescribed treatment for PTSD. Id. Plaintiffs point out that upward departures have sometimes been given in cases where family members of the direct victim suffer similar psychological difficulties and posit that Jacob's "signify[]" the ineffectiveness of medicine he was prescribed to deal with the death of his brother. See PFFCL at 21. Despite agreeing with Plaintiffs' characterization of the caselaw, see, e.g., Estate of Brown v. Islamic Republic of Iran, 872 F. Supp. 2d 37, 43–44 (D.D.C. 2012) (awarding 20% upward departure where sister suffered nervous breakdown requiring a year of medication, which was exceptionally severe reaction to brother's death), the Court does not find that an upward departure is warranted.

As this Court previously noted, it "has a duty to scrutinize plaintiff's allegations and should not unquestioningly accept a complaint's unsupported allegations as true." Pautsch, 2023 WL 8433216, at *2 (cleaned up). The Court's duty to scrutinize and question does not disappear once liability has been found. See Amirentezam v. Islamic Republic of Iran, 2023 WL 5724121, at *11 (D.D.C. Sept. 5, 2023) ("A court does not take factual allegations related to damages as true . . . [and] makes its damages determination in light of the facts and circumstances of the case at hand.") (cleaned up).

5

In this vein, the Court does not see — and Jacob's declaration does not provide — an adequate nexus between the death of his brother and the nervous breakdowns he suffered approximately four and six years after the fact or his treatment for PTSD some eleven years after the attack. Whereas Jacob asserts that he was prescribed medication soon after his brother's death specifically to help him deal with "everything connected to the loss of [his] big brother," Jacob Decl., ¶ 33, his stated reason for suffering nervous breakdowns years later is simply "all [he] had been going through," id., ¶ 34, and he provides no reason for his still-later PTSD treatment. Id. These statements are not enough to tie his breakdowns to the precipitating event — the death of his brother. In light of this, the Court awards $2.5 million, which is a still significant sum that acknowledges the undeniable pain Pautsch's death has caused Jacob.

The Court recognizes, as have others before it, that "no amount of money can alleviate the emotional impact of" the attack. See Fraenkel, 892 F.3d at 357 (quoting Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 32 (D.D.C. 1998)). It nonetheless hopes that the damages it awards today will help Plaintiffs heal from this heartbreaking chapter in their lives.

### IV.  Conclusion

For these reasons, the Court will enter default judgment for Plaintiffs in the amounts listed above. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: June 6, 2024