UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------x
JACOB PAUTSCH, *et al.*,                      :
                                              :
       Plaintiffs,                    :
                                              :     **Case No. 20-cv-03859 (JEB)**
-against-                                     :
                                              :
ISLAMIC REPUBLIC OF IRAN, *et al.*,           :
                                              :
       Defendants.                    :
                                              :
------------------------------------------------------------------------x

**PLAINTIFFS' SUPPLEMENTAL BRIEFING
REGARDING *BOROCHOV V. ISLAMIC REPUBLIC OF IRAN***

**TABLE OF CONTENTS**

I. PROCEDURAL BACKGROUND ................................................................................... 1

II. SUPPLEMENTAL BRIEFING REGARDING *BOROCHOV* ............................................. 5

    a. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1605A(a)(1) over the claims of the eight surviving servicemembers who were not themselves victims of an extrajudicial killing. .................................................................................................... 5

    b. The November 11, 2004, and September 1, 2008, attacks involved extrajudicial killings. ........................................................................................................................ 7

    c. The Court has jurisdiction over James Davis's claim arising out of the August 13, 2007, attack. .......................................................................................................................... 8

CONCLUSION .............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*Amarin Pharms. Ir. Ltd. v. FDA*,
  106 F. Supp. 3d 196 (D.D.C. 2015) ............................................................................................ 9

*Borochov v. Islamic Republic of Iran*,
  94 F.4th 1053 (D.C. Cir. 2024) ......................................................................................... *passim*

*Cabrera v. Islamic Republic of Iran*,
  No. 19-cv-3835 (JDB), 2023 U.S. Dist. LEXIS 14874 (D.D.C. Jan. 27, 2023) ......................... 2

*Cohen v. Islamic Republic of Iran*,
  238 F. Supp. 3d 71 (D.D.C. 2017) ......................................................................................... 5, 6

*Est. of Fishbeck v. Islamic Republic of Iran*,
  No. 18-cv-2248 (CRC), 2024 U.S. Dist. LEXIS 82418 (D.D.C. Apr. 15, 2024) ....................... 7

*Est. of Fishbeck v. Islamic Republic of Iran*,
  No. 18-cv-2248 (CRC), 2024 U.S. Dist. LEXIS 82420 (D.D.C. Apr. 23, 2024) ....................... 7

*Force v. Islamic Republic of Iran*,
  610 F. Supp. 3d 216 (D.D.C. 2022) ........................................................................................... 6

*Harrison v. Republic of Sudan*,
  882 F. Supp. 2d 29 (D.D.C. 2012) ............................................................................................. 6

*Karcher v. Islamic Republic of Iran*,
  396 F. Supp. 3d 12 (D.D.C. 2019) ............................................................................................. 6

*Owens v. Republic of Sudan*,
  174 F. Supp. 3d 242 (D.D.C. 2016) ........................................................................................... 6

*Powerex Corp. v. Reliant Energy Servs.*,
  551 U.S. 224 (2007) ................................................................................................................... 9

*Stearns v. Islamic Republic of Iran*,
  No. 17-cv-131 (RCL), 2024 U.S. Dist. LEXIS 78916 (D.D.C. Apr. 30, 2024) ......................... 7

*Stearns v. Islamic Republic of Iran*,
  No. 17-cv-131 (RCL), 2024 U.S. Dist. LEXIS 78918 (D.D.C. Apr. 30, 2024) ......................... 6

*Van Beneden v. Al-Sanusi*,
  709 F.3d 1165 (D.C. Cir. 2013) ................................................................................... 2, 9, 10, 11

**Statutes**

28 U.S.C. § 1605A .................................................................................................................... 1, 6

Plaintiffs, by and through their attorneys, submit this supplemental briefing regarding the implications of the D.C. Circuit's decision in *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024), for this case, per this Court's May 7, 2024, Minute Order.

## I. PROCEDURAL BACKGROUND

This action was commenced pursuant to the Terrorism Exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, by the filing of a Complaint on December 31, 2020. *See* ECF No. 1. Following entry of default against Defendants Islamic Republic of Iran ("Iran") and the Syrian Arab Republic ("Syria") on September 8, 2022, *see* ECF Nos. 25 and 26, Plaintiffs filed their Proposed Findings of Fact and Conclusions of Law in Support of their Motion for Default Judgment on September 20, 2023. *See* ECF No. 31. This Court granted default judgment in favor of the five family member Plaintiffs in this case on December 5, 2023, *see* ECF No. 36 at 10-11, and denied default judgment for the eight wounded Plaintiffs who survived their terrorist attacks on the basis that they did not articulate a theory of liability for their First Claim of Relief. *See id.* at 11-12. Plaintiffs moved for partial reconsideration of the Court's Order on December 12, 2023, *see* ECF No. 38, which the Court granted in part, instructing Plaintiffs to file an amended complaint alleging a specific cause of action on behalf of the wounded servicemembers, but not requiring service beyond filing the amended complaint on the electronic docket. *See* Jan. 19, 2024, Minute Order.

Plaintiffs filed their Amended Complaint on February 6, 2024, in which they added their theories of liabilities for their First Claim of Relief in favor of the eight wounded Plaintiffs who survived their terrorist attacks, *see* ECF No. 40, and sought entry of default against Iran and Syria on February 27, 2024. *See* ECF No. 41. The Clerk of Court entered default against Defendants on

March 1, 2024. *See* ECF No. 42. Plaintiffs then filed their Supplemental Motion for Default Judgment in Favor of Eight Wounded Servicemembers on March 7, 2024. *See* ECF No. 43.

On March 8, 2024, the Court of Appeals for the D.C. Circuit in *Borochov*, 94 F.4th 1053, overturned the prior holdings of "most judges in this District who have considered this issue [which] have determined that the material-support prong of the FSIA's terrorism exception extends to attempted extrajudicial killings," *Cabrera v. Islamic Republic of Iran*, No. 19-cv-3835 (JDB), 2023 U.S. Dist. LEXIS 14874, at *21 (D.D.C. Jan. 27, 2023), including this Court, *see* ECF No. 36 at 6-7. Plaintiffs described this ruling in their Notice of New Authority filed on March 15, 2024, *see* ECF No. 44. Plaintiffs stated that they would submit further proffers of evidence of completed extrajudicial killings in the November 11, 2004, and September 1, 2008, attacks for which this Court previously held Defendants liable. Plaintiffs also stated that they would raise additional evidence or arguments in support of Plaintiff James Davis's claim arising out of the August 13, 2007, attack, such as that a string of related attacks targeting Americans "should be deemed part of the same 'act or incident,'" as the D.C. Circuit held may be the case in *Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1168 (D.C. Cir. 2013).

Plaintiffs' subsequently-filed Proposed Findings of Fact and Conclusions of Law Regarding Damages for Three Plaintiffs Granted Judgment in the Court's December 5, 2023, Order only included damages requests for the three family member Plaintiffs injured in the April 10, 2009, attack in which CPL Jason Pautsch was killed, and did not include damages requests for the family member Plaintiffs of any of the eight wounded Plaintiffs who survived their terrorist attacks (*i.e.*, Erika Neuman and Charles L. Shaffer, Jr.). *See* ECF No. 46. This Court entered an Order entering judgment in favor of those three family member Plaintiffs on June 6, 2024. *See* ECF No. 49.

2

This Court entered a Minute Order on May 7, 2024, instructing:

> that by May 21, 2024, Plaintiffs shall file a Supplemental Brief addressing: 1) why the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1605A(a)(1) over the claims of the eight surviving servicemembers who were not themselves victims of an extrajudicial killing; and 2) even if the Court has subject-matter jurisdiction over the claims of the servicemembers who were injured in attacks that resulted in extrajudicial killings of other individuals, why the Court has jurisdiction over Davis's claim arising out of the August 13, 2007, attack, including any argument that a string of related attacks targeting Americans 'should be deemed part of the same "act or incident."' *Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1168 (D.C. Cir. 2013).

Plaintiffs requested an extension of time to June 18, 2024, *see* ECF No. 48, which this Court granted. In this briefing, Plaintiffs respond to the Court's questions and further supplement their September 20, 2023, Proposed Findings of Fact and Conclusions of Law in Support of Motion for Default Judgment ("PFFCL"), ECF No. 31-1, and their March 7, 2024, Supplemental Motion for Default Judgment in Favor of Eight Wounded Servicemembers, ECF No. 43, by attaching sworn declarations attesting to the extrajudicial killings that occurred in the November 11, 2004, and September 1, 2008, attacks. For this Court's convenience, the following chart sets forth each of the seven attacks in which the eight surviving servicemembers were injured and the corresponding Plaintiffs' claims, and specifies whether the attack includes an extrajudicial killing and the attack's juridical status.

| Attack date | Plaintiffs | Extrajudicial killing? | Status |
|---|---|---|---|
| Sept. 24, 2004 | Thomas Vriens, AC ¶¶ 207-11. | **Yes.** *See* ECF No. 33 (filed under seal) at p. 125 of the pdf (reporting that "1X USMC [U.S. Marine Corps] WIA Air Evac to Camp TQ and **Died of Wounds**" in the September 24, 2004, attack) and p. 142 of the pdf ("2x AIF [anti-Iraqi forces] KIA," referring to suicide bombers whose deaths were "deliberated" and "caused" | Pending liability ruling requested in Plaintiffs' Supplemental Motion for Default Judgment in Favor of Eight Wounded Service-members, ECF No. 43. |

3

| | | Plaintiffs injuries. *Borochov*, 94 F.4th at 1062. | |
|---|---|---|---|
| Nov. 11, 2004 | Brian Neuman, AC ¶¶ 212-221 | **Yes.** *See* Declaration of Brian Neuman attached hereto as **Exhibit A** and Declaration of Shevan Zebari attached hereto as **Exhibit B**. | Pending liability ruling requested in Plaintiffs' Supplemental Motion for Default Judgment in Favor of Eight Wounded Service-members, ECF No. 43. |
| | Erika Neuman (wife of Brian Neuman), AC ¶ 222 | *See id.* | Granted liability ruling on December 5, 2023, ECF No. 36 at 10-11. |
| Mar. 9, 2005 | Wallace Byars, AC ¶¶ 229-35 | **Yes.** *See* ECF No. 33 (filed under seal) at p. 142 of the pdf (reporting that the "Current BDA [battle damage assessment]" included "1X IPS [Iraqi Police Service] **KIA**" in the March 9, 2005, attack). | Pending liability ruling requested in Plaintiffs' Supplemental Motion for Default Judgment in Favor of Eight Wounded Service-members, ECF No. 43. |
| | Dennis O'Malley, AC ¶¶ 236-42 | | |
| | Richard Vessell, AC ¶¶ 243-49 | | |
| May 9, 2005 | Jason Goldsmith, AC ¶¶ 250-56 | **Yes.** *See* Expert Report of Col. (Ret.) Joel Rayburn, ECF No. 31-2 at 45-46; PFFCL, Ex. B, ECF No. 33 (filed under seal) at p. 154 of the pdf ("2X AIF [anti-Iraqi forces] **KIA**."). Their deaths were "deliberated" and "caused" Plaintiffs injuries. *Borochov*, 2024 U.S. App. LEXIS 5653, at *14. | Pending liability ruling requested in Plaintiffs' Supplemental Motion for Default Judgment in Favor of Eight Wounded Service-members, ECF No. 43. |
| July 25, 2005 | Wallace Byars, AC ¶¶ 260-64 | **Yes.** *See* PFFCL, Ex. B, ECF No. 33 (filed under seal) at p. 164 of the pdf (reporting that "Security Element Confirms 6 CVS [civilians] **Killed**" in the July 25, 2005, attack). | Pending liability ruling requested in Plaintiffs' Supplemental Motion for Default Judgment in Favor of Eight Wounded Service-members, ECF No. 43. |
| | Dennis O'Malley, AC ¶¶ 265-68 | | |
| Sept. 1, 2008 | Charles James Shaffer, AC ¶¶ 275-87 | **Yes.** *See* Declaration of Charles James Shaffer, attached hereto as **Exhibit C** and Declaration of Greg L. Shore, attached hereto as **Exhibit D**. | Pending liability ruling requested in Plaintiffs' Supplemental Motion for Default Judgment in Favor of Eight Wounded Service-members, ECF No. 43. |

4

|  | Charles L. Shaffer, Jr. (father of Charles James Shaffer), AC ¶ 288 | *See id.* | Granted liability ruling on December 5, 2023, ECF No. 36 at 10-11. |
|---|---|---|---|
| Aug. 13, 2007 | James Davis, AC ¶¶ 269-74 | **Yes.** Eight extrajudicial killings occurred in same set of coordinated attacks. *See* Supplemental Expert Declaration of Col. (Ret.) Joel Rayburn, attached hereto as **Exhibit E**. | Pending liability ruling requested in Plaintiffs' Supplemental Motion for Default Judgment in Favor of Eight Wounded Service-members, ECF No. 43. |

## II. SUPPLEMENTAL BRIEFING REGARDING *BOROCHOV*

### a. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1605A(a)(1) over the claims of the eight surviving servicemembers who were not themselves victims of an extrajudicial killing.

Plaintiffs have submitted evidence proving that seven of the eight attacks in this case involved at least one death, and that the eighth attack in which Plaintiff James Davis was injured was part of a set of coordinated attacks. Aside from CPL Jason Pautsch's parents and brother, none of the Plaintiffs at issue are related to servicemembers who were killed in the attacks, and none of the remaining Plaintiffs at issue were themselves killed.

Although the D.C. Circuit held in *Borochov* that *someone* must die in an act of terrorism for it to qualify as an "act of extrajudicial killing," it did not upset the pre-existing principle that the *plaintiff himself* need not die. *See, e.g.*, *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 81 (D.D.C. 2017) ("Plaintiffs need only establish that the bombing here was unauthorized, deliberate, and that there were casualties. It is not necessary, however, for one of the plaintiffs to have died in the attack in order for the state-sponsor-of-terrorism exception to apply.").

The position appears to be "uniform" in this district: "Thus far, courts in this district have uniformly concluded that § 1605A covers a claim for personal injury resulting from an attack in which *at least someone* died, even if the particular plaintiff only suffered injuries." Memorandum

5

Op. and Order, *Burks v. Islamic Republic of Iran*, No. 16-cv-1102 (CRC), ECF No. 65, at 17 (D.D.C. Sept. 30, 2022) (emphasis in original). *See also Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 58 (D.D.C. 2019) ("[j]oin[ing] its sister courts [in] agree[ing] that material support for an attack that extrajudicially killed someone other than the injured servicemember represented in this case is sufficient for jurisdictional purposes") (citing, inter alia, *Cohen*, 238 F. Supp. 3d at 81); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 29, 45 (D.D.C. 2012) (finding subject-matter jurisdiction over claims of servicemembers injured in attack which killed others)).

This uniform approach includes the minority of district court cases that anticipated the *Borochov* ruling, including *Burks*. *See also Force v. Islamic Republic of Iran*, 610 F. Supp. 3d 216, 228 (D.D.C. 2022) (recognizing that subject-matter jurisdiction exists over claims brought by plaintiffs who were physically injured in an attack that killed others because "the same act of killing one person can quite obviously injure another.") (quoting *Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 266 (D.D.C. 2016)).

Indeed, the *Borochov* court decision implicitly confirms this position, noting that "[b]ecause the perpetrator did not kill *anyone* in the attack that injured the Golans, no extrajudicial killing occurred, and neither could there have been material support for 'such an act.'" 94 F.4th at 1060 (emphasis added). *See also id.* at 1061 ("The Golans' injuries were not 'caused by an act of *** extrajudicial killing' because the terrorist attack that injured them did not kill *anyone*.") (citing 28 U.S.C. § 1605A(a)(1)) (emphasis added). The reference to "anyone" makes clear that the D.C. Circuit did not intend to displace the rule that the plaintiffs themselves do not need to be killed.

Courts construing the effect of *Borochov* in their own cases have also at least implicitly ruled accordingly. *See, e.g.*, *Stearns v. Islamic Republic of Iran*, No. 17-cv-131 (RCL), 2024 U.S. Dist. LEXIS 78918, at *6-7 (D.D.C. Apr. 30, 2024) (noting that one of the surviving

servicemember plaintiffs' "injuries appear to arise from an attack in which no one was killed" and instructing the plaintiffs to submit supplemental evidence or briefing); *Stearns v. Islamic Republic of Iran*, No. 17-cv-131 (RCL), 2024 U.S. Dist. LEXIS 78916, at *7 (D.D.C. Apr. 30, 2024) (same with regard to claims of surviving servicemember's sister); *Est. of Fishbeck v. Islamic Republic of Iran*, No. 18-cv-2248 (CRC), 2024 U.S. Dist. LEXIS 82420, at *6-7, 14-15, 24, 48 (D.D.C. Apr. 23, 2024) (recommending default judgment in favor of plaintiffs injured in attacks that killed others); *Est. of Fishbeck v. Islamic Republic of Iran*, No. 18-cv-2248 (CRC), 2024 U.S. Dist. LEXIS 82418, at *19 (D.D.C. Apr. 15, 2024) ("I conclude and recommend the Court find that this attack involved an act of 'extrajudicial killing' within the scope of the terrorism exception to the FSIA because the attack resulted in at least one death.") (citing *Borochov*, 94 F.4th at 1061-1064).

    **b.**    **The November 11, 2004, and September 1, 2008, attacks involved extrajudicial killings.**

To demonstrate that the November 11, 2004, attack included an extrajudicial killing, Plaintiffs are submitting the sworn declarations of Plaintiff Brian Neuman and non-party witness Shevan Zebari, both of which report that the Iraqi interpreter attached to the unit, Ismail Zebari, was killed during the same November 11, 2004, attack in Fallujah in which Mr. Neuman sustained his significant injuries. As Ismail's brother, Shevan Zebari, declared, Ismail was a civilian and an Army contractor who had been working on behalf of the Department of Defense in Iraq on November 11, 2004. *See* **Exhibit B**, Declaration of Shevan Zebari, ¶¶ 1, 7. Ismail was a passenger in the Bradley Fighting Vehicle, seated next to then-Sergeant Neuman when their convoy was attacked. *See id.*, ¶ 10; **Exhibit A**, Declaration of Brian Neuman, ¶ 5 & Ex. A thereto. Mr. Neuman recalled that when "shrapnel generated from an IED passed through their vehicle," it cut through his left arm and then "literally went through" Ismail Zebari. *Id.*, ¶ 6. Mr. Neuman saw the hole in Ismail Zebari's chest and had no doubt that Ismail "was dead at the scene." *Id.*, ¶ 7.

To demonstrate that the September 1, 2008, attack included an extrajudicial killing, Plaintiffs are submitting the sworn declarations of Plaintiff Charles J. Shaffer and Greg L. Shore, the Coroner of Anderson County, South Carolina. These declarations show that non-party Staff Sergeant ("SSG") Charles Pannell died as a result of that attack. Mr. Shaffer confirmed the presence of SSG Pannell in the vehicle he was driving when they were attacked on September 1, 2008, in Mosul. *See* **Exhibit C**, Declaration of Charles J. Shaffer, ¶ 5. SSG Pannell, the tactical commander, was seated next to then-Private Shaffer when "an anti-tank grenade impacted" their vehicle. *Id.*, ¶ 6. After the vehicle came to a stop, even as Mr. Shaffer dealt with significant injuries of his own, he applied a tourniquet to SSG Pannell's severely injured left leg; *see id.*, ¶ 9; however, despite Mr. Shaffer's efforts, SSG Pannell was rendered an amputee and subsequently died on May 8, 2016, from complications resulting from his injury. *See* **Exhibit D**, Declaration of Greg L. Shore, ¶¶ 3, 5, 6. Mr. Shore, who has held the position of Coroner for over 20 years, *see id.*, ¶ 2, determined that "Mr. Pannell died as a result of the injuries he sustained in Iraq." *Id.*, ¶ 7. His contemporaneous findings in the official Coroner's Death and Investigation Report reflect that SSG Pannell's death was "a Homicide due to War Trauma." *Id.* and Ex. A thereto. Further, the contemporaneous Postmortem Report issued by Dr. Brett H. Woodard, the Pathologist for the Anderson County Coroner's Office, "concluded the cause of death to be 'aspiration of gastrointestinal contents due to partial small bowel obstruction following combat related injuries,'" and his "Final Anatomic Diagnosis" indicated that SSG Pannell's death was connected to his "War Related Trauma." *Id.*, ¶ 9 and Ex. B thereto.

    c.    **The Court has jurisdiction over James Davis's claim arising out of the August 13, 2007, attack.**

The D.C. Circuit held in *Borochov* that an "act" of extrajudicial killing, as set forth in 28 U.S.C. § 1605A(a)(1), must result in a death. As described in section II.a above, the plaintiff need

8

not be killed, or even injured by the death itself. It is only necessary for the plaintiff to have been injured in the "act" of which "a foreign government's material support was a proximate cause." *Borochov*, 94 F.4th at 1066.

The D.C. Circuit previously held that "two or more attacks" can "be deemed part of the same 'act or incident'" in certain circumstances, such as when the attacks were coordinated by a single terrorist group to target a particular set of victims. *Van Beneden,* 709 F.3d at 1167-68. There, the court was interpreting the phrase "act or incident" in 28 U.S.C. § 1605A (note), but there is no reason to read the term "act" in § 1605A(a)(1) differently.[1] "A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224, 232 (2007). *See also Amarin Pharms. Ir. Ltd. v. FDA*, 106 F. Supp. 3d 196, 210 (D.D.C. 2015) (citing cases).

The contrary view would result in an absurdity—plaintiffs would have to trace material support to each specific element of coordinated attacks and *show that each element resulted in a separate death*. *See Borochov*, 94 F.4th at 1066 ("proving the time and place at which money, weapons, or other forms of support changed hands, perhaps over the course of years or decades, would be an onerous and unwieldy task"). Indeed, the *Van Beneden* court found it was not necessary to find that "'act' refers to a single terrorist pulling the trigger a single time": while this may be an "ordinary meaning[]" of the term "act," "[m]ining semantics by invoking the ordinary meanings of 'act' and 'incident' provides no obvious help." *Van Beneden*, 709 F.3d at 1168. Under such a restrictive definition, if a terrorist opened fire on a crowded area with a machine gun, an

---

[1] The *Borochov* court, in discussing *Van Beneden*'s instruction to "interpret [§ 1605A's] ambiguities flexibly and capaciously," noted that that case related to a non-jurisdictional section and "[w]e have never interpreted the FSIA's jurisdictional requirements so flexibly." 94 F.4th at 1065. *But see Van Beneden*, 709 F.3d at 1167 n.4 (observing that "Congress sought to lighten the *jurisdictional* burdens borne by victims of terrorism seeking judicial redress" in enacting § 1605A) (emphasis added). But the "interpretation" the *Borochov* court referred to was to the plaintiffs' reading of the word "for." 94 F.4th at 1064-65. The court did not upset its prior reading of the word "*act*" or suggest that it has two different meanings in the same statute.

injured plaintiff would have to show that the *trigger-pull*—that is, bullet—resulting in her injury also caused another victim's death. Nor must the elements of the act be simultaneous—if an American was beaten by Al Qaeda terrorists the day before 9/11 to dissuade him from reporting the terrorists' preparations, clearly the victim would not have to show that the beating *itself* resulted in a death; the 3,000 deaths the following day would suffice. *See id.* (finding that each component of 9/11—including plane crashes in New York, D.C., and Pennsylvania, could constitute a single act or incident).

The *Van Beneden* court also provided guidance on applying its rule: "When determining whether two or more attacks should be deemed part of the same 'act or incident,' we look not to single points of congruence but to the full spectrum along which discrete actions increasingly relate." *Id.* at 1167-68. In making that determination, a court should make "a broad consideration of all relevant facts." *Id.* at 1168.

There, the court found that two simultaneous attacks on two airports in different countries—one in Vienna, and one in Rome—committed by the same terrorist group (Abu Nidal Organization, or "ANO") constituted a single "act or incident." The court credited the following allegations:

> [T]he Vienna and Rome attacks were part of a single "plan to conduct terrorist attacks at airports and tourist attractions frequented by Americans and Israelis." Compl. ¶¶ 29-30. Both groups of attackers trained together in a Syrian-sponsored training camp in Lebanon and coordinated their attacks to occur simultaneously. The two groups used the same type of weapons (Kalashnikov submachine rifles and type F1 hand grenades), which came from a single source (the grenades in each attack bore the same markings), and they executed the same strategy: the terrorists met with an ANO contact upon their arrival at their destination cities, exchanging unused money and passports for clothes and weapons; they surveyed the target terminals the day before the attack; and they initiated the attack at 9 a.m. local time after smuggling their weapons into the airports.

*Id.* at 1167.

10

The court found that "a single group of people committing two simultaneous attacks planned as part of a coordinated assault on an identifiable group of individuals at similar locations using weapons from the same shipment" constitutes the same act or incident. The Court distinguished the case from one "where the only connections between the two terrorist attacks are the attackers' ideology and purpose, training, and general methodology." *Id.*

Here, as reflected in the Supplemental Expert Declaration of Col. (Ret.) Joel Rayburn attached hereto as **Exhibit E**, the August 13, 2007, attack in which Plaintiff James Davis was injured was also part of a "coordinated" set of attacks, involving the same terrorist group, signature weapons, targets, area, and time period. Further, the attacks were intended to serve a common goal.

Specifically, Mr. Rayburn described how the August 13, 2007, attack was part of a "coordinated" set of attacks which AQI initiated to consolidate its power in the Taji-Tarmiyah-Dujail area and deny U.S. forces access to the area. *See id.*, ¶ 2. He listed four attacks committed by AQI in this area within the week following the August 13, 2007, attack, which killed 20 Iraqis (excluding the attackers). One of these attacks, for example, targeted a U.S. patrol using below-vehicle IEDs, much like the Davis attack, killing the interpreter attached to the unit. *See id.*, ¶ 3. Mr. Rayburn also described reports reflecting multiple school bombings in the area, which were likely committed by AQI in order to establish its dominance in the region. *See id.*, ¶ 4.

According to Mr. Rayburn, each of these attacks were most likely committed by AQI (or in some cases, a Sunni terrorist group in Iraq ("STGI") closely associated and acting in coordination with AQI);[2] were committed against the same identifiable group of individuals—

---

[2] As Mr. Rayburn previously explained in his September 20, 2023, expert report, by August 2007 non-AQI terrorist groups in the Taji-Tarmiyah-Dujail area had either joined the "Awakening" movement allied with Coalition Forces or had been subsumed into AQI itself. *See* ECF No. 31-2 at 48. Mr. Rayburn described how he had personally traveled to the Taji-Tarmiyah area multiple times in 2007-2008 and learned firsthand of the extent of AQI's consolidation of control over Sunni terrorist groups and operations by that time. His report reflects how he specifically learned that Tarmiyah was a significant AQI operating hub at that point in 2007. *See id.*

11

American service members and their local allies, including members of the Iraqi armed forces and Iraqi civilians assisting U.S. forces; were committed at similar locations—the Taji-Tarmiyah-Dujail area; and were committed using ubiquitous AQI weapons, including in Mr. Davis's case a buried IED, sourced from AQI's bombmakers. *See* Ex. E, ¶ 5. Further, AQI operatives in this area trained together and worked closely together to commit these and other attacks, and most significantly, they were most likely coordinated and directed by AQI leadership for the specific goal of establishing AQI's dominance of the region. *See id.*, ¶ 6. Mr. Rayburn concluded that this "coordinated" set of attacks "were not random or unrelated attacks." *Id.*

The August 13, 2007, attack in which Plaintiff James Davis was injured accordingly "should be deemed part of the same 'act or incident,'" as the string of related attacks targeting Americans and their local allies which resulted in the extrajudicial killing of 20 Iraqis.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter default judgment against Defendants Iran and Syria in favor of the eight injured Plaintiff service members in this case. Plaintiffs also respectfully request that the Court refer Plaintiffs' damages claims and proofs of citizenship for family member Plaintiffs to a special master for preparation of reports and recommendations consistent with the Court's opinion.

---

[3] The only significant difference between these attacks and those in *Van Beneden* is that they did not occur simultaneously, but there is no reason to read simultaneity as a requirement.

Dated: June 18, 2024

                Respectfully submitted,

                **OSEN LLC**

By:   /s/ Gary Osen
       Gary Osen (DC Bar No. NJ009)
       Ari Ungar (DC Bar No. NJ008)
       Michael Radine (DC Bar NJ015)
       Dina Gielchinsky (DC Bar No. NJ011)
       Naomi Weinberg (DC Bar No. NJ006)
       Aaron Schlanger (DC Bar No. NJ007)
       190 Moore Street, Suite 272
       Hackensack, New Jersey 07601
       Tel.: (201) 265-6400
       Fax: (201) 265-0303

*Attorneys for Plaintiffs*