UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACOB PAUTSCH, *et al.*, <br><br>    Plaintiffs, <br><br>        v. <br><br> ISLAMIC REPUBLIC OF IRAN, <br><br>    Defendant. | Civil Action No. 20-3859 (JEB) |

## MEMORANDUM OPINION

In December of last year, this Court entered default judgment against the Islamic Republic of Iran and the Syrian Arab Republic for their roles in facilitating several terrorist attacks that took place between 2004 and 2009.  It held these foreign states liable for the injuries to only some of the Plaintiffs — a group comprising victims as well as their estates and family members — as the other set of Plaintiffs had shown that Defendants' Foreign Sovereign Immunities Act immunity was waived but had not articulated an adequate cause of action.  In supplemental briefing, that latter group (eight survivors of some of these attacks) now seeks to recover for, among other things, the psychological injuries they suffered at the hands of Defendants.

Before the Court had an opportunity to determine whether Plaintiffs had stated a valid theory of recovery in their second attempt, however, the D.C. Circuit issued a decision that called into question whether the FSIA in fact waived Defendants' immunity over the survivors' claims.  With the benefit of further briefing from Plaintiffs, the Court agrees that the Act does waive immunity for the causes of action of seven of the eight survivors.  Because it concludes

1

that they have now sufficiently pled a cognizable theory of liability, it will grant Plaintiffs' Supplemental Motion for Default Judgment as to those seven but will deny it as to the other one.

I. **Background**

As the Court has already provided a detailed account of the facts of this case in the past, see Pautsch v. Islamic Republic of Iran, 2023 WL 8433216 (D.D.C. Dec. 5, 2023), it will mostly focus on the legal developments that now require it to reconsider whether it has subject-matter jurisdiction.

Plaintiffs are U.S. nationals, along with their estates and members of their families, who were serving in Iraq as servicemembers or military contractors when they were injured or killed in eight terrorist attacks committed by Al-Qaeda in Iraq (AQI) and associated Sunni terrorist groups in Iraq (STGIs) between 2004 and 2009. See ECF No. 40 (Am. Compl.), ¶¶ 1–2. Jason Pautsch, whose estate is the lead Plaintiff, was serving in the U.S. Army when he was killed in an AQI attack involving a suicide-vehicle-borne improvised explosive device (SVBIED) in western Mosul, Iraq. See id., ¶¶ 200–201. As for the eight remaining Plaintiffs, their convoys, vehicles, and hotels were struck by explosive devices in AQI and STGI attacks, causing them to sustain physical and psychological injuries, including post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI). See id., ¶¶ 208–210, 213–215, 224–226, 230–231, 237–238, 244–245, 251–253, 257, 262–263, 267, 270–271, 276–278, 285. Plaintiffs filed this suit against Iran and Syria on December 31, 2020, seeking redress for these horrific events. See ECF No. 1 (Compl.).

On December 5, 2023, this Court entered default judgment against Iran and Syria for these terrorist attacks, but only in favor of those Plaintiffs who had articulated a cognizable theory of liability; this group did not include the eight survivors themselves, who had up to that

point "allege[d] only the vague term of 'personal injury.'" Pautsch, 2023 WL 8433216, at *6. Although it granted relief to only a handful of Plaintiffs, the Court held that it had subject-matter jurisdiction over the entirety of the case under the "terrorism exception" to the Foreign Sovereign Immunities Act, which provides for jurisdiction over cases alleging "personal injury or death" resulting from (*inter alia*) "an act of . . . extrajudicial killing." Id. at *2–4 (quoting 28 U.S.C. § 1605(a)(1)). Most importantly for current purposes, it concluded that this exception applied to the claims of the eight survivors because it understood the FSIA to cover state support for "attempted extrajudicial killings" that did not ultimately result in death. Id. at *3 (noting that "[c]ourts in this district" had generally agreed that such attempts "may still constitute acts of extrajudicial killings").

On March 7, 2024, Plaintiffs sought to rectify the deficiencies that the Court had identified on the liability front for the eight survivors. See ECF No. 43 (Supp. Mot.). Only a day later, however, our Circuit's decision in Borochov v. Islamic Republic of Iran, 94 F.4th 1053 (D.C. Cir. 2024), threw a wrench into their plans. There, the Court of Appeals announced that the relevant portion of the terrorism exception to the FSIA only waives immunity for "completed killing[s]." Id. at 1061. It reasoned that an act of extrajudicial killing, as ordinarily understood, "requires a death," so its absence deprived courts of subject-matter jurisdiction over actions against foreign sponsors of terrorism. Id. It thus expressly repudiated the reasoning that this Court's default-judgment Opinion had relied on — namely, that "a foreign state could still be held responsible if it provided material resources intended for an attempted killing" — finding that it was "foreclosed by a full reading of the statutory text and context." Id. at 1063 (emphasis added).

3

The legal landscape having shifted significantly, this Court held off on adjudicating Defendants' liability any further and instead ordered Plaintiffs to present further briefing explaining why it had subject-matter jurisdiction "over the claims of the eight surviving servicemembers who were not themselves victims of an extrajudicial killing." Minute Order of May 7, 2024. It also required Plaintiffs to address whether this Court could exercise subject-matter jurisdiction over Plaintiff James Davis's cause of action in particular, as it arose from an attack where neither he nor anyone else was killed. Id. With that supplemental briefing in hand, see ECF No. 53 (Supp. Mem.), the Court is now ready to resolve all outstanding jurisdictional and liability questions.

## II.     Legal Standard

Default judgment may be ordinarily entered where a defendant is "totally unresponsive," and its default is plainly willful, as reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment. See Gutierrez v. Berg Contracting Inc., 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000) (citing Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980)) (internal quotation omitted). In the "'absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense,' it is clear that the standard for default judgment has been satisfied." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).

Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally

4

insufficient to make out a claim." Gutierrez, 2000 WL 331721, at *2 (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)).

Under the FSIA, moreover, there is a heightened standard for default judgment because the Act "codifies a baseline principle of immunity for foreign states." Turkiye Halk Bankasi A.S. v. United States, 598 U.S. 264, 272 (2023); Weinstein v. Islamic Republic of Iran, 175 F. Supp. 2d 13, 19–20 (D.D.C. 2001) ("[D]efault judgments under the FSIA require additional findings than in the case of ordinary default judgments."). Section 1608(e) requires that "the claimant establish[] his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Regardless of whether a foreign state makes an appearance, the court must determine that an exception to immunity applies and that the plaintiff has a sufficient legal and factual basis for his claims. See Jerez v. Republic of Cuba, 777 F. Supp. 2d 6, 18–19 (D.D.C. 2011). In making this determination, the court has "a duty to scrutinize plaintiff's allegations" and should not "unquestioningly accept a complaint's unsupported allegations as true." Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 211 (D.D.C. 2012).

**III.   Analysis**

As before, the Court's analysis proceeds as follows: it first addresses the jurisdictional issues and then evaluates Defendants' liability.

   A.   Subject-Matter Jurisdiction

Foreign states are generally immune from suit in federal court, subject to exceptions codified in the FSIA. See 28 U.S.C. § 1604; see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court . . . ."). Relevant here is section 1605A, the so-called "terrorism exception" to the FSIA. See Fraenkel v. Islamic Republic of Iran, 892 F.3d

348, 352 (D.C. Cir. 2018).  Under that exception, the Act abrogates a foreign state's sovereign immunity and provides federal courts with subject-matter jurisdiction over suits against such an entity where (1) "money damages are sought" (2) "against a foreign state for" (3) "personal injury or death that" (4) "was caused" (5) "by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act."  28 U.S.C. § 1605A(a)(1); see also Gration v. Islamic Republic of Iran, 2023 WL 5221955, at *22 (D.D.C. Aug. 15, 2023).

Even when all five conditions are met, however, a federal court may hear a claim only if (1) "the foreign state was designated as a state sponsor of terrorism at the time the act . . . occurred"; (2)  "the claimant or victim was, at the time [of] the act[,]  . . . a national of the United States," member of the armed forces, or government employee or contractor; and (3) "in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim."  28 U.S.C. § 1605(A)(a)(2)(A)(i)–(iii); see also Gration, 2023 WL 5221955, at *22.

Since Borochov casts doubt on only one of the Court's previous conclusions — *viz.*, whether the terrorist attacks that caused injury, but not death, to the eight survivors qualify as acts of "extrajudicial killing" — it sees no need to reassess its earlier determination that the remaining conditions are also met.  See Pautsch, 2023 WL 8433216, at *2–4 (finding that all other prerequisites for subject-matter jurisdiction were satisfied).

Recall that, post-Borochov, an act of extrajudicial killing takes place only when a perpetrator causes "the death of another."  Id. at 1061.  Plaintiffs contend that, appearances to the contrary notwithstanding, this development does not prevent the Court from exercising subject-matter jurisdiction over the causes of action of the eight survivors.  That is so for seven of them,

they say, because Borochov did not upset the "pre-existing principle that the plaintiff himself need not die." Supp. Mem. at 5. They note that this principle has been universally embraced by courts in this district, has continued to guide these courts after Borochov, and was even implicitly approved by the Circuit's decision itself. Id. at 5–7; see also Burks v. Islamic Republic of Iran, 2022 WL 20588923, at *8 (D.D.C. Sep. 30, 2022) ("[C]ourts in this district have uniformly concluded that [the terrorism exception] covers a claim for personal injury resulting from an attack in which at least someone died, even if the particular plaintiff only suffered injuries."). Since at least one person died in the terrorist attacks that caused the injuries of seven of the eight survivors (all but Davis), they accordingly maintain that this Court can exercise jurisdiction over their claims.

The Court concurs. To begin, the text of the terrorism exception waives a foreign sovereign's immunity from suits for "personal injury or death that was caused by an act of . . . extrajudicial killing." 28 U.S.C. § 1605A(a)(1) (emphasis added). The text, therefore, contemplates actions brought by a plaintiff who is injured by a terrorist attack that results in death, even if he himself was not the fatality. This tracks common sense, too, as a single "act of" extrajudicial killing can "quite obviously injure another." Force v. Islamic Republic of Iran, 610 F. Supp. 3d 216, 228 (D.D.C. 2022) (emphasis added) (citation omitted). Indeed, Congress knows how to limit liability to the estates and family members of those who died — viz., in the Torture Victim Protection Act, which supplies the definition of "extrajudicial killing" applicable in this context, see 28 U.S.C. § 1605A(h)(7), and limits relief to actions for "wrongful death." Pub. L. No. 102-256, §2(a)(1) (emphasis added); Force, 610 F. Supp. 3d at 223 & n.1 (highlighting that TVPA, unlike terrorism exception, only permits recovery for direct victims of extrajudicial killing — i.e., decedents' estates and any other legal representatives).

This near-uniform interpretation of the relevant text is also consistent with Borochov. As Plaintiffs explain, the Circuit there repeatedly said that the underlying attack did not qualify as an extrajudicial killing, not because it did not result in the death of the plaintiffs, but because it did not cause the death of "anyone." Supp. Mem. at 6; Borochov, 94 F.4th at 1057, 1060–61. And when the court turned to the plaintiffs' submission that the perpetrator's death counted as the necessary killing, it did not dismiss the argument out of hand because it was the perpetrator and not the plaintiffs who died. See Borochov, 94 F.4th at 1062. It instead explained that the perpetrator's death at the hands of a bystander did not suffice both because the foreign sovereigns could not have "undertaken" or sponsored this killing and because this shooting was not the cause of the plaintiffs' injuries. Id.

The Court thus agrees with Plaintiffs that Borochov "implicitly confirms," or is at the very least consistent with, the foregoing interpretation of the terrorism exception. See Supp. Mem. at 6; see also Estate of Fishbeck v. Islamic Republic of Iran, 2024 WL 1933820, at *6 (D.D.C. Apr. 15, 2024) (agreeing that even after Borochov, extrajudicial killing occurs when "the attack result[s] in at least one death"); Cabrera v. Islamic Republic of Iran, 2024 WL 3225942, at *7 (D.D.C. Jun. 28, 2024) (exercising jurisdiction over survivors' action post-Borochov because "two Afghani soldiers . . . were killed in the attack"); Thole v. Islamic Republic of Iran, 2024 WL 2208208, at *10 (D.D.C. May 16, 2024) (similar). And it agrees that Plaintiffs have established that the injuries of seven of the eight survivors were caused by Defendants-sponsored attacks in which at least one person died. See Supp. Mem. at 3–5, 7–8 (detailing deceased victims of relevant terrorist attacks).

That leaves Davis, who was the victim of a terrorist attack carried out by AQI on August 13, 2007, which thankfully did not result in any deaths. See Am. Compl., ¶¶ 269–72. This

8

Plaintiff, then, was not the direct or indirect victim of an act of extrajudicial killing. Or so it would seem. Yet Plaintiffs insist that this, too, is a deceiving first look. After all, they say, the D.C. Circuit has previously stated that "two or more attacks" can be treated as a single "act or incident" for purposes of the relation-back provision of the FSIA's statute of limitations. See Supp. Mem. at 9 (quoting Van Beneden v. Al-Sanusi, 709 F.3d 1165, 1167–68 (D.C. Cir. 2013)). Since the text at issue also uses the word "act," they ask this Court to similarly interpret the terrorism exception to encompass sets of attacks, even if only one results in an extrajudicial killing. Id. at 9–10. Closing the loop, since Davis's attack was part of a coordinated set of AQI attacks — some of which resulted in deaths — they reason that the Court should treat them all as one extended extrajudicial killing. Id. at 10–12.

      This time around the Court cannot go along with Plaintiffs. Starting with the text once more, the phrasing here ("an act of") differs from the language at issue in Van Beneden ("act or incident"). This matters for a couple of reasons. For one, the Circuit there suggested that the two terms did not mean the same thing, with the term "incident" referring to "the totality of [a] terrorist's violence in a single day" and "act" referring to "a single terrorist pulling the trigger a single time." Van Beneden, 709 F.3d at 1168. Since Congress employed the more inclusive term in one provision but not the other, this strongly suggests that the terrorism exception has a narrower scope. Cf. Henson v. Santander Consumer USA Inc., 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language . . . convey differences in meaning."). This principle of interpretation is especially convincing here since this variation in wording occurs within the same statute, reinforcing the idea that Congress intended for the terrorism exception to be more circumscribed than the relation-back provision. See Hansen v. Islamic Republic of Iran, 2024 WL 3026517, at *8 (D.D.C. Jun. 17, 2024)

9

(holding that "the FSIA contains a waiver of immunity for discrete 'acts' of terrorism though not necessarily sprawling 'incidents'"). This straightforward interpretation of the terrorism exception therefore shows that Plaintiffs' position cannot be squared with the text.

Even if there were doubts as to the meaning of the terrorism exception, Borochov instructs that such waivers of foreign-sovereign immunity must be "narrowly construed 'in favor of the sovereign.'" 94 F.4th at 1062 (citation omitted); see also Federal Republic of Germany v. Philipp, 592 U.S. 169, 184 (2021) ("We interpret the FSIA as we do other statutes affecting international relations; to avoid, where possible, producing friction in our relations with other nations.") (cleaned up); Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108, 115–16 (2013) (narrow interpretation necessary to prevent "adopt[ing] an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches"). While courts may still interpret "ambiguities" in the FSIA's non-jurisdictional provisions — such as the relation-back provision — "flexibly and capaciously," Van Beneden, 709 F.3d at 1167, they must do the exact opposite for the FSIA's narrow waivers of sovereign immunity to avoid "open[ing] the door to litigation against foreign governments that the Political Branches have not clearly authorized." Borochov, 94 F.4th 1062; contra Supp. Mem. at 9 n.1 (eliding distinction between jurisdictional and non-jurisdictional FSIA provisions). As Plaintiffs seek an interpretation that would result in more, not less, liability for foreign sovereigns, the Court rejects it.

In sum, the Court concludes that it can exercise subject-matter jurisdiction over the claims of all of the survivors save Davis, as the former's injuries resulted from an act of extrajudicial killing but the latter's did not. Having previously found that the remaining Plaintiffs had cleared all other preliminary hurdles, see Pautsch, 2023 WL 8433216, at *4–5, it proceeds to the merits.

B.      Liability

Although Section 1605A creates a private right of action, it does not set out guidance on the substantive bases for liability that determine plaintiffs' entitlement to damages. Consistent with guidance from the D.C. Circuit, district courts "may rely on well-established statements of common law, found in state reporters, the Restatement of Torts, and other respected treatises." Fraenkel, 892 F.3d at 353; see also Bettis v. Islamic Republic of Iran, 315 F.3d 325, 333 (D.C. Cir. 2003) (using Restatement (Second) of Torts "as a proxy for state common law" in determining FSIA liability).

In its previous Opinion, the Court declined to enter default judgment against Iran and Syria for the injuries of the survivors, explaining that those Plaintiffs had not cited any particular tort or "articulate[d] a theory of liability." Pautsch, 2023 WL 8433216, at *6. These Plaintiffs (minus Davis) now offer three bases for liability: assault, battery, and intentional infliction of emotional distress. See Supp. Mot. at 3–5. Since IIED proves a valid theory of recovery for the seven survivors that remain — and since, as Plaintiffs recognize, they can recover under only one theory of liability in any event, see id. at 5 — the Court's analysis begins and ends there.

Under general principles of tort law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress," both to the victim and "to a member of such person's immediate family who is present at the time." Estate of Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 26 (D.D.C. 2009) (quoting Restatement (Second) of Torts § 46). Because "terrorism is sufficiently extreme and outrageous" and "intended to inflict severe emotional harm on even those not present at the site of the act," Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 400 (D.D.C. 2015), courts in this district have allowed immediate family members of terrorism victims to

11

state a claim for IIED even if they were not present at the site of the attack. See, e.g., id. at 401. In its first default-judgment Opinion, the Court found that Plaintiffs had adequately pled IIED claims for the "family members of the victims injured or killed in AQI or STGI attacks," including these survivors' family members. Pautsch, 2023 WL 8433216, at *6. Now they have also adequately alleged that the survivors themselves suffered the same kind of severe emotional distress — namely, severe mental anguish, extreme emotional pain and suffering, and the loss of their family members' society, companionship, comfort, advice, and counsel. See Am. Compl., ¶¶ 211, 221, 235, 242, 249, 256, 264, 268 286. They, accordingly, have stated a valid theory of recovery.

**IV.    Conclusion**

For these reasons, the Court will grant Plaintiffs' Supplemental Motion in part and deny it in part. It will enter default judgment on liability for intentional infliction of emotional distress as to all remaining Plaintiffs except Davis, and those seven may subsequently offer proof of damages. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: July 29, 2024