UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACOB PAUTSCH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, *et al.*, <br><br> Defendants. | Civil Action No. 20-3859 (JEB) |

### MEMORANDUM OPINION

On December 5, 2023, this Court entered a default judgment finding Defendants the Islamic Republic of Iran and the Syrian Arab Republic liable for an April 10, 2009, terrorist attack in Iraq that killed U.S. Army Corporal Jason Pautsch. Each of his parents was subsequently awarded $5 million in solatium damages, while his brother received $2.5 million. The three of them now seek that same amount in punitive damages, which the Court will order.

**I.  Background**

As the details of the attack that resulted in Pautsch's death have been described in two previous opinions, see Pautsch v. Islamic Rep. of Iran (Pautsch I), 2023 WL 8433216 (D.D.C. Dec. 5, 2023) (determining liability); Pautsch v. Islamic Rep. of Iran (Pautsch II), 2024 WL 2864215 (D.D.C. June 6, 2024) (awarding compensatory damages), this Court will only briefly discuss the facts of this case. As relevant here, Pautsch was killed in an attack involving a suicide-vehicle-borne improvised explosive device detonated by a jihadist who had been recruited by a network of Al-Qaeda in Iraq (AQI) supported by Syrian dictator Bashar al-Assad's regime. See ECF No. 31–2 (Col. (Ret.) Joel Rayburn Report) at 36–39, 49. Iran, for its part, "provided money and weapons to AQI," Pautsch I, 2023 WL 8433216, at *5, and is "highly

1

likely" to have provided material support for the AQI network responsible for the attack. See Rayburn Report at 9.

Pautsch's family members commenced this action against the two nations in 2020. See Pautsch I, 2023 WL 8433216, at *1. This Court subsequently granted default judgment and compensatory damages for Pautsch's parents and his brother. See id. at *6; Pautsch II, 2024 WL 2864215, at *2–3. For clarity and not for lack of respect, the Court refers to Pautsch's father, David, and brother, Jacob, by their first names. Pautsch's mother is Teri Johnson.

## II.    Legal Standard

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, contains a "terrorism exception," which permits plaintiffs to sue for money damages a foreign state designated a sponsor of terrorism for "personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1); see id. § 1605A(c) (providing cause of action to certain plaintiffs for such acts.). The statute specifies that "[i]n any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages." Id.; see Fraenkel v. Islamic Rep. of Iran, 892 F.3d 348, 353 (D.C. Cir. 2018).

Plaintiffs may recover damages by showing "that the projected consequences are reasonably certain (*i.e.*, more likely than not) to occur, and [proving] the amount of damages by a reasonable estimate." Fraenkel, 892 F.3d at 353 (quoting Hill v. Rep. of Iraq, 328 F.3d 680, 684 (D.C. Cir. 2003)). While these requirements create "some protection against an unfounded default judgment," plaintiffs need not produce "more or different evidence than [a court] would ordinarily receive; indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required." Id. (citation omitted).

**III.     Analysis**

Although the compensatory damages awarded to Plaintiffs are considerable, they now seek an equivalent amount in punitive damages. In BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003) — two seminal cases on punitive damages — the Supreme Court emphasized that such "damages should only be awarded if the defendant's culpability . . . is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." State Farm, 538 U.S. at 419; Gore, 517 U.S. at 575; see also Oveissi v. Islamic Rep. of Iran, 879 F. Supp. 2d 44, 55–56 (D.D.C. 2012) ("Punitive damages, made available under the revised FSIA terrorism exception, serve to punish and deter the actions for which they are awarded.").

While U.S. servicemembers agree to put their lives on the line, coordinated and lethal terror attacks that aim to weaken American forces — as occurred here, see Rayburn Report at 49–50 — are direct assaults that undermine national security. The emotional toll on families and fellow servicemembers is grave, as courts in this district have consistently recognized. See, e.g., Est. of Fouty v. Syrian Arab Rep., 2024 WL 4006166, at *27 (D.D.C. Aug. 30, 2024) (finding Syrian-funded terrorists' torturing and killing of two servicemen "horrific, egregious, and designed to have maximum public impact by instilling fear"); Murphy v. Islamic Rep. of Iran, 740 F. Supp. 2d 51, 80 (D.D.C. 2010) ("The nature of the defendants' acts [in bombing a marine barracks] and the nature and extent of the harm defendants intentionally caused are among the most heinous the Court can fathom."). Given the reprehensibility of Defendants' actions, punishment beyond compensatory relief may aid not only to hold them morally accountable but also to deter similar misconduct by the two nations in the future. See Selig v. Islamic Rep. of Iran, 573 F. Supp. 3d 40, 75 (D.D.C. 2021) ("There is a need for deterrence [for such acts]

because, time and again, courts in this district have been confronted with families shattered by Iran-backed terrorists.").

That said, the Court has grown increasingly dubious of the actual deterrent effect of punitive damages in these types of FSIA cases. Since Congress amended the FSIA in 2008 to allow plaintiffs to seek punitive damages, see 28 U.S.C. 1605A(c); National Defense Authorization Act for Fiscal Year 2008 (NDAA), Pub. L. No. 110-181, Div. A, Title X, § 1083(a)(1), 122 Stat. 338, a legion of cases awarding such damages has developed, all with the goal of deterring Iran and Syria from funding future terrorist activity targeting Americans. See, e.g., Valore v. Islamic Rep. of Iran, 700 F. Supp. 2d 52, 89 (D.D.C. 2010) ("In the hopes that Iran is paying more attention to the cases that have been brought against it, [by awarding $1 billion in punitive damages,] the Court seeks to send the strongest possible message that Iran's support of terrorism against citizens of the United States absolutely will not be tolerated by the courts of this nation."). Plaintiffs, however, have offered no reasons to support the assumption that these awards in fact meaningfully deter such activity. Although the Court will award punitive damages in this case to maintain consistency, it may be more reluctant to do so in future FSIA cases absent evidence of their deterrent effect.

The Court now turns to the issue of determining the appropriate amount of such damages. Plaintiffs request punitive damages that are equal to their compensatory awards. See ECF No. 62 (Mot. for Punitive Damages). Courts in this district have routinely granted such requests in similar cases, see Abedini v. Gov't of Islamic Rep. of Iran, 422 F. Supp. 3d 118, 142 (D.D.C. 2019) (awarding equal compensatory and punitive damages); Panahi v. Islamic Rep. of Iran, 2020 WL 6591425, at *12 (D.D.C. Nov. 10, 2020) (same); Moradi v. Islamic Rep. of Iran, 77 F. Supp. 3d 57, 73 (D.D.C. 2015) (same), and the Supreme Court has explicitly endorsed this

practice.  See State Farm, 538 U.S. at 425 ("When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."); Exxon Shipping Co. v. Baker, 554 U.S. 471, 513–15 (2008) (discussing various ways of constructing punitive damages and settling on upper limit of 1:1 ratio between punitive and compensatory damages in maritime case).  This Court will thus follow suit and award $5 million each to David and Johnson, and $2.5 million to Jacob.

## IV.  Conclusion

For these reasons, the Court will grant default judgment for Plaintiffs on punitive damages in the amounts listed above.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 1, 2025